**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/06
```

PETER FAGAN and COMANCHE
INVESTMENT, LLC.,

　　　　　　　　　　　　　　Plaintiffs,

　　　　-against-

FIRST SECURITY INVESTMENTS, INC.
MARTIN J. McGRATH; LIDIO
RANCHARAN and MARK SEGOVIA,

　　　　　　　　　　　　　　Defendants.

No. 04 Civ. 1021 (LTS)(THK)

MEMORANDUM OPINION AND ORDER

　　　　Plaintiffs Peter G. Fagan ("Fagan") and Comanche Investment, L.L.C.

("Comanche") (collectively "Plaintiffs") bring this action, alleging conversion, breach of fiduciary

duties, breach of contract, negligence, fraud, civil conspiracy and securities law violations in

connection with the loss of one million dollars Plaintiffs invested in the Vault Consortium

Investment Club ("Vault"). Plaintiffs pursue these claims against Defendants First Security

Investments, Inc. ("First Security"); Martin J. McGrath ("McGrath"), a senior investment

consultant for First Security; and Lidio Rancharan ("Rancharan") and Mark Segovia ("Segovia"),

both individuals associated with Vault. Plaintiffs' claims against the other Defendants named in

the First Amended Complaint (the "Complaint") -- Wachovia Corporation, First Union National

Bank, First Union Securities, Inc., and First Clearing Corporation -- were voluntarily dismissed

with prejudice.

　　　　Defendants First Security and McGrath move to dismiss the action. First Security's

Copies mailed P's counsel, moving D's
Chambers of Judge Swain counsel, + MJ
9.15.06

motion papers,[1] which variously invoke Rule 56 of the Federal Rules of Civil Procedure, standards applicable under Rules 9(b) and 12(b)(6) of those Rules, and the pleading provisions of the Private Securities Litigation Reform Act ("PSLRA"), argue principally that Plaintiffs have failed adequately to plead their causes of action.  In their opposition papers, Plaintiffs assert the sufficiency of their existing pleading and request leave to replead any claims found deficient by the Court.  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.  Plaintiffs also invoke 28 U.S.C. § 1332 as a basis for subject matter jurisdiction, although they fail to plead facts sufficient to enable the Court to determine the citizenship of all of the parties.

For the reasons that follow, the instant motion to dismiss is denied as to Plaintiff Fagan's conversion and civil conspiracy claims.  The motion is, however, granted, with leave to replead, as to all of Plaintiffs' remaining claims.

## BACKGROUND

The facts alleged in Plaintiff's Amended Complaint are taken as true for the purposes of this motion.  See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  In April of 2002, Plaintiff Fagan communicated with Defendants Rancharan and Segovia, principals of Vault, about investing in Vault.  (Compl. ¶¶ 12-13.)  Rancharan and Segovia informed Fagan that Vault was "associated with" Defendant First Security and that First Security was a licensed securities broker and dealer and would be the primary broker/dealer for the Vault program.  (Id. ¶ 13.)  Rancharan and Segovia

---

[1]     Defendant McGrath's Notice of Motion incorporates by reference, and relies exclusively upon, First Security's motion papers.

also told Fagan that all investment funds in Vault would be placed in separate sub-accounts maintained with First Union National Bank, First Union Securities, Inc. and/or First Clearing Corporation.[2] (Id.)

On April 27, 2002, Plaintiff traveled to New York City to meet with Rancharan and Segovia at the office of First Security, where Defendant McGrath introduced himself as a Senior Investment Consultant with First Security and an "associate" of Rancharan and Segovia. (Id. ¶ 15.) At that meeting, Fagan was told "that as a member of Vault, he would receive a 25% return per month on his investment," and also that the principal amount invested could not be removed from a separate sub-account created under First Security's bank and brokerage accounts without the investor's written permission. (Id. ¶ 16.) Plaintiff then met separately with McGrath, who told him that he and First Security were "closely associated" with Vault, but not owners of it, that he would oversee the trading accounts maintained at First Union Securities, that he "vouched for" the honesty and trustworthiness of Defendant Segovia, whom he had known for approximately four years, and that he would be in a position to "look out for" Fagan. (Id. ¶ 17.)

Following these meetings, Fagan contacted First Union Bank and confirmed the information he had been provided by Defendants Rancharan, Segovia and McGrath. (Id. ¶ 18.) Based on those confirmations, Fagan executed an asset management agreement with Defendants Rancharan and Segovia and an investment club account agreement with First Union Securities, Inc. The asset management agreement, which is annexed to the Complaint, denominates Rancharan and Segovia as "Asset Managers," provides that Fagan would wire transfer $1,000,000.00 "in the name

---

[2]     As noted above, Plaintiffs' claims against First Union National Bank, First Union Securities, Inc., and First Clearing Corporation have been voluntarily dismissed with prejudice.

of VAULT CONSORTIUM INVESTMENT CLUB in **FIRST UNION NATIONAL BANK** . . .

FOR TRADING FROM PROFIT WITHOUT LOSS OF CAPITAL VALUE," and provided for

trading in the account by the Asset Managers. (Compl. Exh. A (emphasis in original).)  The

agreement characterizes the arrangement as a "vehicle of cooperative enterprise" and provides for

"the benefit 50% for Principal and 50% for Asset Manager." (Id. 2 and ¶ 1.)

On or about May 10, 2002, Fagan wire-transferred $1,000,000.00 to First Union

Bank.  Plaintiff learned, in early June 2002, that the investment funds had allegedly been

transferred to a bank in Switzerland. (Compl. ¶¶ 20-22.)  Fagan questioned Rancharan and

Segovia about the transfer of funds, and was told that Defendants McGrath and First Security had

approved the transfer. (Id. ¶ 23.)  Defendants have refused to return the funds and have reported

that other individuals have absconded with them. (Id. ¶ 24.)


## DISCUSSION

In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the Court is obliged to accept as true the allegations in the

complaint and draw all reasonable inferences in favor of the non-moving party. Blue Tree Hotels

Inv. v. Starwood Hotels and Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  Rule

8(a) of the Federal Rules of Civil Procedure requires only that a complaint include a "short and

plain statement of the claim showing that the pleader is entitled to relief." Leatherman v. Tarrant

County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  A court should

not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitled him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Court's review is "limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Id. See also Sable v. Southmark/Envicon Capital Corp., 819 F. Supp. 324, 328 (S.D.N.Y. 1993) (in deciding a motion to dismiss, a court "may consider documents which form the basis of allegations of fraud if the documents are 'integral to the complaint.'") (internal citations omitted)). The Court may grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002). Furthermore, the "simplified notice pleading standard [of the Federal Rules] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 512.

*Claims of Plaintiff Comanche*

McGrath and First Security argue that, "[o]ther than being named as a Plaintiff, [Comanche] is not mentioned in the Complaint. Comanche signed nothing and the funds were transferred by Fagan, not Comanche. Clearly, no claim has been stated for Comanche." (Mem. of Law in Supp. of First Security Investments, Inc.'s Mot. to Dismiss 13.) Plaintiffs do not address this argument in their opposition papers to this motion. The Complaint merely states that Comanche is a Nevada LLC with its principal place of business in Texas, and states that Plaintiff Fagan was told at the April 27, 2002, meeting that "[n]one of the funds deposited by Plaintiffs Fagan or [Comanche] would be released from the sub-account without the written permission of Plaintiffs." (Compl. ¶¶ 3 and 18.) However, the Complaint only alleges that Plaintiff Fagan wire-

transferred the money at issue here.  (Id. ¶ 21; see also "Vault Consortium Investment Club

Certificate" in name of Peter Fagan, annexed to Ex. A to Compl.)  The Complaint fails to set forth

any cause of action on the part of Plaintiff Comanche.  The Complaint will therefore be dismissed

insofar as it is brought on behalf of Comanche.

        In that Plaintiffs have requested leave to replead any dismissed claims, they will be

afforded an opportunity to do so.  Rule 15 provides that leave to replead "shall be granted when

justice so requires."  Fed. R. Civ. P. 15(a).  Although leave to amend is not automatic, a plaintiff

generally is to be afforded an opportunity to test his claim on the merits if the underlying facts or

circumstances relied upon by a plaintiff may be a proper subject of relief.  Foman v. Davis, 371

U.S. 178, 182 (1962).


*Conversion Claim*

        In their first cause of action, Plaintiffs allege that Defendants have converted

Plaintiffs' investment funds.  Defendants' motion cites New York standards for the common law

claims and Plaintiffs, whose complaint asserts that various misrepresentations were made, and the

account funds maintained, in New York, have not disputed the applicability of New York law to

their claims.  "The elements of conversion under New York Law are [that]: (1) the party charged

has acted without authorization, and (2) exercised dominion or a right of ownership over property

belonging to another, (3) the rightful owner makes a demand of the property, and (4) the demand

for the return is refused." Fabry's S.R.L. v. IFT Int'l, No. 02 Civ. 9855, 2003 WL 21203405, at *3

n. 3 (S.D.N.Y. May 21, 2003) (quoting Seanto Exports v. United Arab Agencies, 137 F. Supp. 2d

445, 451 (S.D.N.Y. 2001)).  The "unauthorized exercise of dominion or control" must "interfer[e]

with and [be] in defiance of a superior possessory right of another in the property." Id. (citation

and internal quotation marks omitted).

Here, Plaintiffs allege that Defendants Rancharan and Segovia told Fagan that First Security and McGrath had authorized the transfer of Plaintiff Fagan's investment funds "to a bank in Switzerland" and that the transfer had not been authorized by Fagan or Comanche.  Plaintiffs further allege that they have made demands for the return of the funds and that "Defendants have refused to return the funds and have reported that other individuals absconded with the same." (Compl. ¶¶ 22-24.)  Plaintiffs allege in their Complaint that Defendant McGrath was present at the meeting with Defendants Rancharan and Segovia where Fagan was told that "[t]he principal amount of the investment funds could not be removed from the separate sub-account created in the name of an individual investor without the investor's written permission" and that McGrath "concurred in statements and representations" made by Rancharan and Segovia.  (Id. ¶ 15.) Drawing all reasonable inferences in favor of Plaintiffs, it cannot be said that Plaintiffs could prove no set of facts consistent with these allegations that could support a cause of action for conversion. "Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal."  Desiano v. Warner-Lambert Co., 326 F.3d 339, 347 (2d Cir. 2003).  Thus, Defendants McGrath and First Security's motion to dismiss Plaintiff Fagan's conversion claim is denied.


*Civil Conspiracy Claim*

In their sixth cause of action, Plaintiffs allege that defendants have engaged in a civil conspiracy in relation to the conversion of Plaintiffs' investment funds and the defrauding of Plaintiffs.  The elements of a civil conspiracy are (1) an agreement between two or more persons, (2) an overt act, (3) intentional participation in the furtherance of a plan or purpose and (4) resulting damage.  Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette

Sec. Corp., No. 00 Civ. 8688, 2002 WL 362794, at *13 (S.D.N.Y. Mar. 6, 2002).  New York law

does not recognize the substantive tort of civil conspiracy; the claim is available "only if there is

evidence of an underlying actionable tort."  Missigman v. USI Northeast, Inc., 131 F. Supp. 2d

495, 517 (S.D.N.Y. 2001).

        Plaintiff Fagan's underlying tort claim for conversion has, as explained above,

survived this motion to dismiss.  Plaintiffs allege that "Defendants accepted Plaintiffs' investment

with the intention of converting the same" and that they "conspired to defraud Plaintiffs and

convert their funds."  (Compl. ¶¶ 40 and 45.)  Thus, there are allegations (albeit thin ones) of an

agreement and of knowing participation.  Again, "[r]ecovery may appear remote and unlikely on

the face of the pleading, but that is not the test for dismissal."  Desiano, 326 F.3d at 347.  Thus,

Plaintiff Fagan's conspiracy claim, as against Defendants McGrath and First Security, survives the

motion to dismiss.


*Breach of Fiduciary Duty Claim*

        In their second cause of action Plaintiffs allege, based on their general recitation of

facts as summarized above, that "Defendants served as fiduciaries of Plaintiffs' investment funds,"

and that "Defendants have breached their fiduciary duties to Plaintiffs."  (Compl. ¶¶ 30-31.)  To

succeed on a claim for breach of fiduciary duty under New York law, a plaintiff must demonstrate

the existence of a fiduciary relationship between the parties and a breach of that duty by the

defendant.  See Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., No. 98 Civ.

6907(MBM), 2000 WL 335557, at *10 (S.D.N.Y. Mar. 29, 2000).  A fiduciary relationship may be

found "when one [person] is under a duty to act for or to give advice for the benefit of another

upon matters within the scope of the relation."  Flickinger v. Harold C. Brown & Co., 947 F.2d

595, 599 (2d Cir. 1991) (quoting Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (App.

Div. 1987) (quoting Restatement (Second) of Torts § 874 cmt. a (1977)).

        The existence of a fiduciary relationship cannot be determined "by recourse to rigid

formulas." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1231

(S.D.N.Y. 1991), rev'd on other grounds, 967 F.2d 742 (2d Cir. 1992).  Rather, "New York courts

typically focus on whether one person has reposed trust or confidence in another who thereby gains

a resulting superiority or influence over the first." Id.  "Mere reposal of one's trust or confidence in

a party, however, does not automatically create a fiduciary relationship; the trust or confidence

must be accepted as well." Thermal Imaging, Inc. v. Sandgrain Sec., Inc., 158 F. Supp. 2d 335,

343 (S.D.N.Y. 2001).

        Here, there is nothing in the Complaint to suggest the existence of a fiduciary

relationship between First Security and/or McGrath, on the one hand, and Plaintiffs, on the other,

except Plaintiffs' conclusory allegation that "Defendants" were fiduciaries.  Nor does the

Complaint proffer anything to identify the "fiduciary" duty alleged breached by the moving

Defendants.  Plaintiffs' allegations of McGrath's concurrence in certain factual representations by

others, and of his representations that he would "oversee" trading and "look out" for Fagan, are

insufficient to demonstrate the basis of Plaintiffs' fiduciary breach claim or their entitlement to

relief against these defendants on that claim.  Cf. Fed. R. Civ. P. 8(a).  Accordingly, Plaintiffs'

second cause of action will be dismissed, with leave to replead.


*Breach of Contract Claim*

        In their third cause of action, Plaintiffs allege that "Defendants have breached their

various contracts with the Plaintiffs." (Compl. ¶ 34.)  The two elements of a New York breach of

contract claim are that (1) a contract existed between the parties; and (2) the defendants committed

an act in violation of that contract.  Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98

F.3d 25, 31 (2d Cir. 1996).

As Defendants point out, there is no allegation in the Complaint identifying the

existence or terms of any contract between Plaintiffs and Defendant McGrath and/or Defendant

First Security.  Plaintiffs in their opposition papers state that they "are aware of no written

contracts with First Security except the New Account form signed by Peter Fagan," (Mem. in

Supp. of Pl.s' Resp. and Opp'n to First Security Investments, Inc.'s Mot. to Dismiss 21), but seek

leave to replead this cause of action, proffering a partially completed "new account form" that

they alleged was provided to Fagan by McGrath.  The cause of action, as currently plead, fails to

state a claim and must be dismissed.  While it does not appear that the proffered document is any

more efficacious than the existing allegations of the Complaint to elucidate the basis of

Plaintiffs' contract claim against First Security and McGrath, the Court will give Plaintiffs an

opportunity to replead this third cause of action.  See Foman v. Davis, 371 U.S. at 182.


*Negligence Claim*

Plaintiffs allege in their fourth cause of action that "Defendants [sic] mishandling

and/or misappropriation of the investment funds constitute [sic] negligence." (Compl. ¶ 37.)

Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the

defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.  See Merino

v. New York City Transit Auth., 639 N.Y.S. 2d 784, 787 (App. Div. 1996).  Defendants assert that

Plaintiffs have failed to allege that there was a duty owed, how that duty was breached, and how

the breach proximately caused the injury.

Plaintiffs point to the portion of their Complaint alleging that McGrath told Fagan he was closely associated with Vault and would look out for the Plaintiff as support for the existence of a duty owed to Plaintiffs.  However, Plaintiffs fail to identify what duty was owed to them.  Thus, Plaintiffs have failed to make a short and plain statement of the claim showing that they are entitled to relief.  Plaintiffs' negligence claim is dismissed without prejudice as against Defendants McGrath and First Security, with leave to replead.  See Foman v. Davis, 371 U.S. at 182.

*Common Law Fraud Claim*

Based on their general recitation of facts as summarized above, Plaintiffs assert as their fifth cause of action that "Defendants" misled Plaintiffs "by providing false representations about the relative safety of Plaintiffs' investment funds and about the restrictions upon Defendants' ability to transfer the investment." (Compl. ¶ 40.)  The elements of a claim for fraud under New York law are (1) that defendant made a material false representation, (2) with the intent to defraud the plaintiff, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of that reliance.  Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995).  Rule 9(b) of the Federal Rules of Civil Procedure requires that, "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . must be plead with particularity."  Fed. R. Civ. P. 9(b).

Plaintiffs' fraud claim is plead insufficiently.  It fails, for the most part, to specify the statements allegedly made by First Security and/or McGrath as its agent, and how such alleged statements were false.  The fifth cause of action will, accordingly, be dismissed with leave to replead.  See Foman v. Davis, 371 U.S. at 182.

*Exchange Act Section 10(b) Securities Law Claim*

Based on their general recitation of facts, Plaintiffs assert in their seventh cause of action that the "transaction involving the Plaintiffs herein constitutes the sale of a security." (Compl. ¶ 49.) Plaintiffs further assert that the "actions" of Defendants Rancharan, Segovia, First Security and McGrath "constitute fraud in connection with the sale of a security" and thus violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") as well as Rule 10b-5 promulgated by the SEC thereunder (collectively, "Section 10(b)"). (Id. ¶ 51.) In order to state a claim for securities fraud under Section 10(b), a plaintiff must demonstrate that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000). Section 10(b) claims are subject to the heightened pleading standards of both Federal Rule of Civil Procedure 9(b), discussed above, and the Private Securities Litigation Reform Act ("PSLRA"), which requires a plaintiff to plead facts that give rise to a "strong inference" that Defendants acted with scienter. See 15 U.S.C. § 78u-4(b)(2). "A plaintiff can establish this intent 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (internal citation omitted). The Court assumes for purposes of the following analysis that the "transaction" referred to in Plaintiffs' seventh cause of action is the purchase of an interest in Vault.

Defendants argue that the investment account at issue here is not a security for

purposes of securities law and that, even if it were, Plaintiffs have failed to plead scienter and causation as required.  The Exchange Act defines the term "security" broadly, and includes in the definition both "a certificate of interest or participation in any profit-sharing agreement" and an "investment contract."  15 U.S.C.A. § 78(c)(a)10.  The Supreme Court has defined the term "investment contract" to include any "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."  SEC v. W.J. Howey, Co., 328 U.S. 293, 298-99 (1946).  Because the agreement at issue references shared profits, a cooperative enterprise, and a participation certificate, reading the Complaint and attachments in the light most favorable to the Plaintiffs, it cannot be said that Plaintiffs would be unable to prove that the investment contract at issue here is a security for purposes of the Exchange Act.

However, Plaintiffs' pleading fails to meet the Fed. R. Civ. P. 9(b) requirement that fraud be plead with particularity, as well as the pleading requirements of the PSLRA.  Again,  it fails, for the most part, to specify the statements allegedly made by First Security and/or McGrath as its agent, and how such alleged statements were false.  Plaintiffs' conclusory pleading also fails properly to allege scienter.  The Complaint merely recites the statutory statutory pleading requirement and offers no facts showing motive or the requisite strong inference of recklessness or conscious misbehavior.

Thus, under the facts as plead by Plaintiffs, even reading them in the light most favorable to the Plaintiffs, Plaintiffs' securities claim should be dismissed without prejudice and with leave to replead.  See Foman v. Davis, 371 U.S. at 182.

<u>CONCLUSION</u>

For the foregoing reasons, the instant motion to dismiss the Complaint is denied as to Plaintiff Fagan's conversion and civil conspiracy claims.  The motion is, however, granted, with leave to replead, as to all of Plaintiffs' remaining claims.

Any further amended Complaint shall be filed and served within 21 days from the date of this Memorandum Opinion and Order.  Any claims that are not timely replead will be dismissed with prejudice and without further advance notice to Plaintiffs.

SO ORDERED.

Dated: New York, New York
      September 15, 2006

                                              LAURA TAYLOR SWAIN
                                        United States District Judge